**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christina Jungblut,<br><br>   Plaintiff,<br><br>v.<br><br>Salt River Project Agricultural Improvement and Power District,<br><br>   Defendant. | No. CV-19-05837-PHX-DLR<br><br>**ORDER** |

  Pending before the Court is Defendant Salt River Project Agricultural Improvement and Power District's ("SRP") Motion for Summary Judgment, which is fully briefed. (Docs. 23, 27, 28.) The Court grants the motion because Plaintiff Christina Jungblut fails to make out a prima facie case for her Americans with Disabilities Act ("ADA") and Arizona Civil Rights Act ("ACRA") claims.

**I. Background**

  Plaintiff began working in SRP's Vegetation Management Department ("VM Department") as a Scheduling Coordinator in 2015. (Doc. 23-2 at 2.) That department is responsible for maintaining or removing customer-owned vegetation that encroaches on SRP's power lines. (*Id.*)

  Around that time, the VM Department transitioned from one software platform to another and underwent restructuring. (*Id.* at 2-3.) Notably, the Engineering Technician position was eliminated, and its duties were distributed to the Scheduling Coordinator, among other positions. (Doc. 27-2 at 2.)

The VM Department expected the Scheduling Coordinator to implement the new software platform when it launched. (Doc. 23-2 at 4.) Until it launched, the Scheduling Coordinator provided support for the Business Analyst at the VM Department, scheduling the ad-hoc maintenance work that took place between regularly scheduled maintenance work. (Doc. 27-2 at 4.)

A year into Plaintiff's tenure as the Scheduling Coordinator, her supervisor met with her and provided a draft of her job expectations, which included scheduling preventative maintenance for tree crews and providing support for that work using the new software platform. (Doc. 23-2 at 4; Doc. 23-1 at 7.) Plaintiff balked at these new expectations, so her job description was revised, and a one-on-one training on the new software platform was established. (Doc. 23-2 at 4-5.) At no point did scheduling duties disappear from her job description, which listed duties alphabetically rather than by priority. (Doc. 23-1 at 9; Doc. 27-5.)

The parties dispute how well Plaintiff took to the new responsibilities and software platform. SRP claims that Plaintiff never achieved a satisfactory level of performance with the new software platform and fell behind in her work. (Doc. 23 at 9-10.) Plaintiff emphasizes the accolades she received on certain projects as well as the new software platform's "hiccups and inaccuracies." (Doc. 27 at 5.) Further, she claims that the one-on-one training was inadequate. (*Id.* at 4-6.)

In October 2016, while in this training period, Plaintiff was diagnosed with carpal tunnel syndrome, and her doctor required that she take a 20-minute break every hour to perform stretches and, if necessary, ice her wrists. SRP granted this accommodation, which ultimately limited Plaintiff's workday to 4.5 working hours. (Doc. 23-2 at 5.) Plaintiff disputes that this was a true accommodation because SRP still expected her to complete eight hours' worth of work, supervisors and colleagues regularly interrupted her breaks, and she was required to answer the phone during breaks (Doc. 23-1 at 10-11.)

That December, Plaintiff's doctor placed her on sick leave for about a month. During that period, SRP's employees found "numerous errors" with her work, which

Plaintiff does not dispute. (Doc. 23-2 at 6.) She returned to work the same 4.5 hour schedule as before. Supervisors met with her about the errors and temporarily offloaded her ad-hoc scheduling duties so that she could spend more time improving her skills scheduling preventative maintenance. (*Id.*)

From then on, Plaintiff's work schedule continued to oscillate with her doctor's orders, but Plaintiff never performed her duties to SRP's satisfaction (Doc. 23-2 at 7), and Plaintiff admitted to her shortcomings on several of her job duties (Doc. 23-1 at 16). SRP terminated Plaintiff in May 2017. (Doc. 23-2 at 7.)

Plaintiff filed this suit, alleging violations of the ADA and the ACRA. (Doc. 1.) Defendant moved for summary judgment on both claims. (Doc. 23.)

**II. Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

### III. Analysis

To survive summary judgment on an ADA or an ACRA[1] claim, a Plaintiff must show that she was: (1) disabled within the meaning of the ADA or ACRA; (2) qualified to perform the essential functions of her position; and (3) suffered an adverse employment action. *Samber v. Providence St. Vincent Medical Center*, 675 F.3d 1233, 1237 (9th Cir. 2012). Defendant concedes that genuine disputes of fact exist as to elements one and three. (Doc. 23 at 11.) The analysis, then, will proceed with whether Plaintiff was qualified to perform the essential functions of her position.

The "essential functions" of a position are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). A function may be essential if it (1) is the reason the position exists; (2) cannot be easily distributed among other employees; or (3) the function is highly specialized such that the incumbent was hired specifically for his or her ability to perform it. 29 C.F.R. § 1630.2(n)(2). "Evidence of whether a particular function is essential includes, but is not limited to: (i) [t]he employer's judgment as to which functions are essential; (ii) [w]ritten job descriptions prepared before advertising or interviewing applicants for the job; (iii) [t]he amount of time spent on the job performing the function; . . . and/or (vii) [t]he current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3). Reading Plaintiff's Response charitably, Plaintiff either fails to identify the essential functions of her job or else those essential functions overwhelmingly resemble the essential functions of the Engineering Technician position, for which she was unqualified. She cannot survive summary judgment under either interpretation.

Defendant argues that the essential functions of the "Scheduling Coordinator" position was to "schedule[] preventative maintenance," pointing to SRP's judgment, the current work experience of incumbents in similar jobs, and written draft job descriptions.

---

[1] Courts apply the same analysis whether for an ADA or ACRA claim. *See Whitmire v. Wal-Mart Stores, Inc.*, 359 F. Supp. 3d 761, 762 (D. Ariz. 2019).

(Doc. 23 at 12.)  Plaintiff argues that Defendant presented her with a final job description over a year after she began working as the Scheduling Coordinator (and after she was diagnosed with carpal tunnel syndrome), and even the draft job descriptions failed to identify which of her duties was essential.  (Doc. 27 at 7.)  But Plaintiff never suggests what her position's essential functions were.  And in the same breath, she contends that she was qualified to perform the essential functions of her job—whatever they were.  (*Id.* at 8.)

Without identifying essential functions, Plaintiff cannot support her claim that she performed those essential functions, and unsupported statements cannot create a triable issue of fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment.").  It is Plaintiff's burden to show that she was qualified to perform the essential functions of her position.  *See Samber*, 675 F.3d at 1237.  She cannot carry that burden without identifying what those essential functions are.

But, maybe, while Plaintiff does not specifically identify which of the tasks listed on the job description as essential, she still identifies the essential functions by inference, which the Court must draw in her favor.  Here, Plaintiff characterizes the "Scheduling Coordinator" position as an "Engineering Technician" position in all but name, with "a large portion of [her] daily work" being "a large portion" of the previous Engineering Technician's duties.  (Doc. 27 at 7.)  Defendant does not dispute this.

Was Plaintiff qualified to perform the Engineering Technician duties, then?  No.  Plaintiff concedes "I'm not qualified to do an engineering tech position . . . it's because I didn't have the schooling, education with a degree; I didn't have the knowledge or experience that our engineering tech did."  (Doc. 23-1 at 34; *accord* Doc. 27 at 7.)  And missing requisite education renders a person unqualified for the job:

> [A]n individual who fails to satisfy the job prerequisites cannot be considered "qualified" within the meaning of the ADA unless she shows that the prerequisite is itself discriminatory in effect.  Otherwise, the default rule remains that "the obligation to make reasonable accommodation is owed only to an individual with a disability who . . . satisfies all the skill, experience, education and other job-related selection criteria.

*Johnson v. Bd. of Trustees of Boundary Cnty. Sch. Dist. No. 101*, 666 F.3d 561, 567 (9th Cir. 2011) (quoting 29 C.F.R. Pt. 1630, App. to § 1630.9(a)).  Because it is undisputed that Plaintiff lacked the requisite education to perform the Engineering Technician duties, which comprised a "large portion" of Plaintiff's duties as the Scheduling Coordinator, she fails to show that she was qualified to perform the essential duties of her position as she describes them.

**IV. Conclusion**

Plaintiff either cannot identify the essential duties of her position (as is her burden), or else the essential duties of her position aligned with the Engineering Technician position, for which, she concedes, she was not qualified.  Consequently, she fails to make out a prima facie claim under the ADA and the ACRA, and any claim for punitive damages must fail as well.  Therefore,

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 23) is granted.  The Clerk of the Court is directed to enter judgment accordingly and terminate this case.

Dated this 19th day of January, 2022.

Douglas L. Rayes
United States District Judge